WILLIAM T. McGRAW v. ABRAHAM LAPHAM.

*Bailment—Deposit of money—Liability of bailee.*

In this case it is held that the defendant held the money sued for as bailee of plaintiff's assignor, and is liable to plaintiff for the same.

Error to Wayne. (Gartner, J.) Argued October 19, 1888. Decided October 26, 1888.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Charles Flowers,* for appellant.

*W. L. Carpenter (A. C. Angell,* of counsel), for defendant.

CAMPBELL, J. In this case plaintiff sued defendant for the amount deposited with him by Fred D. Smith, and assigned to plaintiff. The court below ordered a verdict for defendant.

Plaintiff showed by Smith that in October, 1887, he had $1,000, the proceeds of a drug business that he had sold out, and which, on Smith's going to California to look up an establishment there, he left behind him in Wayne county, with his wife, and before going he asked

defendant to take it and keep it till she should come to California, when she would bring it to him.    This the defendant said he would do.    Mrs. Smith died during his absence, and he did not hear of it until he returned in December.    He then called on defendant to get such balance as would remain after deducting what defendant had paid out, and remuneration for his services.    They figured up items for funeral expenses, doctor's bills, and some other things, including two items of $50 and $25 sent Smith while in California, and $15 paid him after his return.    After getting at what should be deducted, defendant said he was not just ready to settle then, but would be in shape the next week to pay him the balance of the money, which he admitted he had.    There were a few small items, on which Smith also testified.

Smith further testified that his wife had no other money beyond a few dollars.

On cross-examination Smith identified a letter which he wrote to his wife in November, 1887, which contained this language:

"DEAR WINNIE:    Many thanks for the $25.    I am sorry to have called upon you for it, but I hope to be able to send it back soon.    Concluding by your not sending the $200 that you had assumed the management of affairs, I take pleasure in tendering you my best wishes, and if I can be of any assistance, I will be pleased."

A part of another letter, the date of which is not given, and which was not allowed to be read in full, was as follows:

"Your letter received.    I am very sorry you are having so much trouble.    But do not worry.    They cannot take your money if they knew you had it.    I will send a letter to the storage company, and also an order to you, and if you feel like it I would start for California.    I guess we can make a living here.    I would not worry so much about spending your money.    I can easily make as much more here in fly-paper alone next summer.    It, of

course, is taking some money to get straightened around; but that is nothing more than I expected. You seem to feel as though that would be all we would ever have. I made that where it is hard to make it, and here, where they make money easy, it ought not to be hard."

The court shut out some letters, the contents of which do not appear in the bill of exceptions. It appeared that Smith telegraphed to his wife for $200, and that she did not send it; but defendant sent such money as was sent, sending the $50 in reply to a telegram to him personally, which turned out to be after Mrs. Smith's death, of which Smith was not then informed.

Defendant put in no testimony.

We are unable to see any reason why plaintiff should not have recovered what he claimed. The testimony is clear that the money belonged to Smith, and that Lapham knew it, and so treated it. The letters shown have no tendency to show that Smith ever gave it to his wife. The utmost that they tend to show is that Mrs. Smith had some fears about spending money, and assumed some restraint on it, which Smith was good-humored enough not to quarrel about. But they have not the slightest tendency to show that he had parted with his own property. The bailment of Lapham was one in which he acted by agreement with Smith, and never denied or doubted his interest. The bills paid, or intended to be paid, were Smith's bills, on which he, and not his wife, was liable, and which could only be deducted by his consent, which, it appears, he gave. Lapham was bound to pay him the money.

It is to be regretted that we are not able to give judgment on the record. The defense is unconscionable, and without any legal foundation. The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.